In the case of the United States v. Nathan Nosley, a lot of the facts and evidence that we saw in Cedar Rapids were overwhelming. They were disturbing. But this case is important because it goes to the core of making sure that we give everyone, even people accused of the worst crimes, a fair trial. This morning I'm going to focus my presentation on the issues that we had in jury selection. Difficult trials often start with difficult and lengthy jury selection. The hard part on Monday morning quarterbacking some of these jury selection issues is that we now know what the evidence was. I'd ask us to try to think about going back to that day in June of 2021 before any evidence was presented. I don't want to throw salt in my own game. In Cedar Rapids, we do get 45 minutes of attorney-directed jury selection. We like that as the defense bar. It's a privilege to get to talk to the jury for that long. In particular, Judge Roberts, the magistrate judge who presided over this case, I like the way he does jury selection. He gives the attorneys considerable latitude in the questions that we get to ask and discuss with the potential jurors. He's really good at getting jurors to open up and give honest answers. Because he is good at that, we get a lot of information from our jurors if we're doing our jobs right. Some of that information that comes out then, as Judge Reed, one of the things that I like when she does cases is we'll get information out, we'll spot an issue, and she'll say, well now what do we do about it? That's kind of where we get our issues in jury selection. Judge Roberts gets a lot of information out and what are we going to do about it, as Judge Reed would say. We've got a very big courtroom in Cedar Rapids. There's windows. We bring 40 or 50 people in for jury selection. Everybody's a little bit nervous. They don't want to appear biased. They want to be there to do their civic duty. And they're giving their honest answer. Initially, they're a little bit reserved. I can be fair and impartial. Of course, I can follow a federal judge's instructions. Everybody is capable and is going to feel that they can do that. Everybody's going to admit that or state that they can follow the facts and the law. That's how we're wired as human beings. Everybody thinks of themselves as a... You're brief about three jurors. Do you agree that the only one at issue on appeal is the one who sat? I agree with that general proposition. It's a circuit governing law, isn't it? It is. But we don't talk about anyone else. I think the other jurors, you can kind of see the... It's important to see just to give a context. You're in the appellate court now. You're not arguing for people who exercise discretion initially. We're reviewing the exercise of discretion as to one juror. And that's what we're here. That's all we can do. We'll jump into the meat of the case then. One of the things that Judge Roberts does, which again, I like because it gets the jurors talking and it puts them at ease, is he'll give this pumpkin pie contest judging analogy. It's talking about something a little bit lighthearted. And Judge Roberts will explain that if he was at the Iowa State Fair and he was asked to judge a pie baking contest, he would have to tell the applicants... I want to focus you. Isn't there an explicit finding that the juror who sat could be fair and impartial? The juror who sat? No. That was when we jumped down to... He was able to be fair and impartial. I think the exact transcript here, let me just... Who sat? This was juror number three is how the government refers to him. He is on my brief on page nine. The government's brief argues whether a juror sat is actually impartial is an issue of fact. And the trial court found that juror number three was able to be fair and impartial. Is either of those propositions wrong? It is. The juror... Do you agree it's a finding of fact? There's a case law in Nelson. Is that a fair reading of our decision in Nelson? I think given the concept text of the juror's specific answer, it may be a finding of fact. But I guess our position would be that it's clearly erroneous based on the transcript. That's what follows if it's a finding of fact. Right. Now was there a finding that he's able to be fair and impartial after the colloquy? I believe that would be the correct way to state that. All right. So now we review that finding. If that finding is not clearly erroneous, what's left of your position? Then there wouldn't be anything left to that argument. So now we know what we're... I think that's what we're talking about. Okay. Right. That finding was clearly erroneous. And obviously you have conceded, I think, as you have to, that you have to establish that on appeal to prevail on this issue. Everything else is over the dam, so to speak. Right. And then... Counsel, I think maybe, for me anyway, the distinction here is do we follow U.S. v. Jones or a case that is hard to pronounce, U.S. v. Thong Tham? The second one, Your Honor. Why? The reason that we would follow that is because we're really concerned about how the potential jurors' past history, opinions, and their statements on the record, frankly, once they've admitted that they cannot be fair and impartial. And all of the jurors that we're talking about here did, when they were questioned about that, did say that they could not be fair and impartial. So after having that on the record, their testimony was, no, Your Honor, I cannot be fair and impartial. Then they're rehabilitated. So here the district court tried to rehabilitate this prospective juror, and they answered by saying, I could probably be fair. But then the court concluded that, well, I interpret their comments to mean that they could look at the facts and decide the case on the facts. Right. That is how Judge Roberts interpreted their response. And I think when you look at the actual transcript, the judge specifically said, you know, are you going to be able to do your job in this case, which is to be a trier of the facts and determine if the government has proven the elements of its case and not just go with your gut? I guess that's what it comes down to. Would you be able to do that, juror number three? And his answer was probably. And the government did make the point that I could have asked follow-up questions. And I think our overall picture here on the rehabilitation of these jurors and the cases is, what would my follow-up question have been at that point? He already had said that he could not be fair and impartial due to the nature of the case. I think my follow-up question would have been, and I think it still works on review, just to drive home the point is, okay, juror number three, I can tell from your questionnaire that you're married when you walk down the aisle and the pastor asked you, can you be faithful and love your wife for the rest of your life? If you would have said probably, how would that have went over for your future wife? And we need something stronger than probably when we're dealing with the ultimate sentence in this case, which ended up being 140 years. So because of the high stakes on this, the probably, I can probably follow the law. You've already said that probably is not good enough, but what about Judge Loken's question about, well, how did the, what was the finding of the district court and how does that interplay with our previous decision saying probably is not good enough? Well, I think if you stick to the actual transcript and what was said and the fact that, you know, and not just go with your gut, the answer is probably that falls into the probably camp, that that's why it's not sufficient to rehabilitate that particular juror. And after the other jurors had been asked and questioned and it was kind of clear that the judge wanted them to be able to be fair and impartial, like everybody can, that that's how that was going to play out, that probably would be good enough. And that's why I put the other jurors in there, just to get the overall context of that. And then you could also see the difference between when Judge Roberts was asking the jurors, there was an initial juror who said she could not be fair and impartial. Judge Roberts did excuse her for cause because he couldn't rehabilitate his own juror in that sense. I mean, I think he probably asked a couple follow-up questions, but eventually he did excuse that juror for cause. And we're not saying, and just to clarify on this, I did want to clarify on this, we're not saying that the judge can never rehabilitate a juror. What we're saying is that rehabilitation of these jurors, if it's done correctly, it should at least result in the juror swearing that they can be fair and impartial. And that they can decide the case not based on emotion. Let me ask this, and Judge Grouse may know better than me, but is there a case that says probably is not sufficient rehabilitation? You know, I'm not sure if Judge Grouse was referring to the Tsarnaev case or if there was a different case. No, the Thong Tham case. Oh, the Thong Tham, okay. The what? It's a citation. My follow-up to that is, isn't the district court in the best position to observe? In other words, there'd be a difference between probably and probably, you know. Don't you think that the district court's in the best position to determine perhaps which one of those is a more firm, I can do this versus maybe I can't? I understand your point on that, but I think when we do come to, you know, oaths and something really serious like that, you know, we stick to the text of the oath that we need to have, is that yes, I can do this, I will do this, I promise to do this as opposed to probably or I hope or maybe. We really need to get kind of some of the conditions. Well, that's actually an interesting point because they do in fact take an oath to be fair and impartial right after when they're sworn in, right? They do, right. But then that is kind of where you get this conflicting testimony. Then if we've got... No, it's over. We're past the testimony. Yeah, I guess... He says probably and then if he won't take the oath, that says the probably isn't the can. Counsel, what I was referring to, I'll refer to it by its citation. F3rd 1119 where the Eighth Circuit said a juror who could probably be fair and impartial is not what we would consider impartial. Impartial probably is not good enough. Thank you, Your Honor. But then we also have U.S. v. Jones where there's slightly different language and we said it was not an abuse of discretion. In that case, the juror said, I don't honestly know, but I will try. Right. And that was not an abuse of discretion. So I think they're really case specific, obviously, based on the facts and the actual wording. The last point that we would make here is that we had a courtroom full of 45, 50 people. We had plenty of jurors. Most cases don't go to trial in the Northern District. So we really want to make sure that when the jurors give honest and open answers like that, that we do respect what they're telling us. Because it is a great privilege for them to actually open up and give us their honest opinions on that. Even though some of those opinions may not be what they feel like a court isn't going to want to hear. Thank you. Thank you. Mr. Tremble. May it please the Court. Counsel. Mark Tremble, U.S. Attorney's Office, Cedar Rapids, Iowa. Your Honors, regarding the third juror, part of it goes into the context. The judge looking at this juror and deciding what his responses, including the word probably, meant and how he evaluated that. The context here is we had an earlier juror who talked about a relative who had been sexually abused. This juror specifically said, I have a young granddaughter that would have a hard time dealing with it, I think. So it was in response to counsel's question, counsel talked about how traumatic it is to look at child pornography, how that could have an impact, how a person could have physical reactions based on that. Asked if it would be difficult for you to be on a jury, having to look at images and videos of child pornography. My question is why are these cases that Judge Ross is asking you about not in either brief? Your Honor, I guess there was numerous issues. The case was complicated. We spent a lot of time on sufficiency of the evidence and I guess had, you know, had we anticipated that the entire focus of the argument would have been this just one juror, we would have. You could have told that from the appellant's brief. The last thing argued was sufficiency of the evidence. I know that dominated in the trial court. Yes, I understand, Your Honor. You should have known that they were there, we were, they were a new playing field on appeal. Now, have you read, do you know all these cases? What's your comment on Jones v. Jones? Your Honor, I don't have any comment. The cases that we cited in our brief and in the defense brief, but I don't have anything additional on those two cases. What I would say is defense counsel talked a lot about the physical trauma. If you saw that and you couldn't get it out of your mind, could you be fair and impartial? And these jurors who are sitting in that situation, no one wants to serve on a child pornography jury. No one wants to look at that evidence. And so people, when asked a leading type of question, their initial response is no, I don't believe so. Judge Roberts comes back and says, wait a minute, nobody wants to look at this. The question is, can you put your visceral reaction aside? And so Judge Roberts is looking at this juror and he's basically looking at, here's what the situation was with the juror, that he had a young granddaughter and it would be tough to look at these images. And he's looking at the visceral reaction, which he could observe from the juror in response to counsel's questioning. Did defense counsel use all their peremptories? I believe so, Your Honor. Let's see, of the three, at least one was stricken. Were two stricken? Two were stricken, Your Honor. So the three judges he mentioned, two were stricken. So defense counsel was out when they got to three? I would assume that defense counsel would have prioritized if the peremptories were limited. Number three would have been of the least concern in this regard. I believe we had six and they had ten. And so two of the, if I remember right, so two of the ten that counsel struck would have been these two. And then the third one he left on, there were eight others he struck instead of this juror. So there were ten people of greater concern than number three. I would say that's fair, Your Honor. And so now we have to do this for cause. And then we have to redo it on appeal. I understand the court's concern. Basically, Judge Roberts is looking and he says, well, and he looks and he sees this juror's demeanor and his response and what the juror's initial concern was. And he has to read what the probably means and he has to read the demeanor of the juror and make an assessment based on that. And given all that, when he looked at that, did the court abuse his discretion? Was it manifestly wrong? Under the facts of this case, we don't believe it was. That a juror who comes in and says he would have difficulty looking at child-born because he's got a granddaughter who's about the same age is not the same level of concern about his partiality as someone who had a child who had been molested or someone who knew one of the parties to a case or somehow had some other issue which caused greater concern. And I think when the court looks at this and sees multiple jurors don't want to be on this jury because they don't want to look at child pornography and says, now, can you get past that and look at the facts? And he gets responses from three of them and this one said probably. He didn't say absolutely. He said probably. And then there wasn't any follow-up on that. Is that enough to call it an abuse of discretion where it's manifestly wrong? It was not. And so based on that, we would ask that the court affirm. Thank you. I'll give you a couple minutes for rebuttal. Your Honor, I only have 52 seconds. I will waive my 52 seconds. Very good. The case has been thoroughly briefed and this issue has been helpfully argued and we'll take it under advisement. Please call the next case.